HUMAN RIGHTS PARTY OF ANN AR-
BOR, and Sonia R. Yaco, by her next
friend, Charles Ream, on her own be-
half and on behalf of all minors simi-
larly situated, Plaintiffs,

v.

The SECRETARY OF STATE FOR the
STATE OF MICHIGAN, and his agents
—school election officials administering
Ann Arbor School District Board elec-
tions, Defendants.

Civ. A. No. 38333.

United States District Court,
E. D. Michigan, S. D.

May 11, 1973.

Gabe Kaimowitz, Ann Arbor, Mich.,
for plaintiffs.

Edmond F. DeVine, Ann Arbor, Mich.,
Russell A. Searle, Asst. Atty. Gen., Lan-
sing Mich., for defendants.

Before EDWARDS, Circuit Judge,
KAESS, Chief District Judge, and GU-
BOW, District Judge.

OPINION AND ORDER

GUBOW, District Judge.

Plaintiffs have instituted this
action to enjoin the enforcement of the
Michigan statute governing eligibility to
hold office on the Boards of Education
in Michigan school districts, M.S.A. §
15.3492, M.C.L.A. § 340.492, and to have
the court declare the statute unconstitu-
tional on the ground that it denies per-
sons under eighteen (18) years of age
equal protection of the law in violation
of the Fourteenth Amendment. Juris-
diction is under 28 U.S.C. § 1343, 28 U.
S.C. § 2201, 28 U.S.C. § 2202, and 42 U.
S.C. § 1983. Pursuant to 28 U.S.C. §§
2281, 2284, a three-judge panel was con-
vened to consider the case.

The facts are undisputed:

Plaintiff, Human Rights Party of
Ann Arbor, endorsed the candidacy of
Plaintiff Yaco, then fifteen (15) years
old, for election as a member of the
Board of Education of the School Dis-
trict of Ann Arbor. The election was
held on June 12, 1972. Sonia Yaco com-
plied with the procedural requirements
for candidacy by submitting a petition,
signed by more than eighty-five (85)
qualified electors, that she be certified
as a candidate. Defendant's agent, Of-
fice of Operations of the Ann Arbor
Public Schools, denied certification of
Miss Yaco's candidacy for the June 12
ballot. In doing so, the Office of Opera-

tions was acting in accordance with the Michigan statute under attack in this case. That statute provides in pertinent part:

"Any school elector in a school district . . . shall be eligible to election or appointment to office in such school district."[1] M.S.A. § 15.-3492, M.C.L.A. § 340.492

Under M.S.A. § 15.3511, M.C.L.A. § 340.511 (which, it should be pointed out, is not here challenged), "A school elector shall possess the qualifications provided for qualified electors in section 1 of article 2 of the constitution . . .". Article 2, § 1, as modified by the 26th Amendment to the United States Constitution, includes the requirement that an elector be at least eighteen (18) years of age. Thus, the effect of the statute being challenged here is to exclude persons under eighteen (18) years of age from eligibility for election to the Board of Education.

On June 7, 1972, a hearing was held on an Order to Show Cause why a preliminary injunction should not issue. The preliminary injunction was denied by District Court Judge Lawrence Gubow.

Defendants have moved to dismiss the action or, in the alternative, for summary judgment.

The question of whether the classification created by M.S.A. § 15.3492, M.C.L.A. § 340.492 offends the equal protection clause of the Fourteenth Amendment presents the threshold problem of determining the proper standard to apply in resolving the question. Two possible standards have evolved. The tradi-

tional test is "[whether the challenged] classification rests on grounds wholly irrelevant to the achievement of [a valid state] objective". McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). See, Turner v. Fouche, 396 U.S. 346, 362, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). The more exacting "compelling interest" standard requires the state to show that the classification created by the state statute is necessary to promote a compelling state interest. Dunn v. Blumstein, 405 U.S. 330, 337, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Kramer v. Union Free School District, 395 U.S. 621, 626–628, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969).

The initial and direct impact of the Michigan statutory age restriction is felt, of course, by those who seek office, and the "compelling interest" standard has not generally been invoked by the Supreme Court to test restrictions on candidacy status. Bullock v. Carter, 405 U.S. 134, 142–143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); Turner v. Fouche, supra, 396 U.S. at 362, 90 S.Ct. 532. As Plaintiffs strenuously contend, however, the restriction on the right to seek office necessarily limits the right of voters to vote for the candidate of their choosing. See, Stapleton v. Clerk for the City of Inkster, 311 F.Supp. 1187 (E.D.Mich.1970); Manson v. Edwards, 345 F.Supp. 719 (E.D.Mich.1972). Where the "fundamental right" to vote is limited by State action, the "compelling interest" standard of review is more frequently called into play. See, e. g., Dunn v. Blumstein, supra, 405 U.S. at 337, 92 S.Ct. 995; Harper v. Virginia Board of Education, 383 U.S. 663, 86 S. Ct. 1079, 16 L.Ed.2d 169 (1966).[2]

---

1. An additional requirement in the statute, omitted from the excerpt quoted here, requires that an office holder be the owner in his own right of property which is assessed for taxes. This requirement has been declared unconstitutional by the State Attorney General.

2. Generally, the compelling interest standard applies when the statute at issue "place[s] a condition on the exercise of the right to vote" or "grants the right to vote to some citizens and denies the franchise to others", Dunn v. Blumstein, supra, 405 U.S. at 337, 92 S.Ct. at 1000, or when, as a result of statutory scheme, "lines are drawn on the basis of wealth or race". MacDonald v. Board of Education, 394 U.S. 802, 807, 89 S.Ct. 1404, 22 L.Ed.2d 739.

Nonetheless, the mere existence of a statutory barrier to access to the ballot does not itself require application of the more rigid standard of review even though the field of choice open to voters is necessarily limited thereby. Bullock v. Carter, *supra*, 405 U.S. at 143, 92 S. Ct. at 856. "In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." *Id.* The Court in *Bullock* held that the compelling interest standard must apply to a Texas statutory scheme requiring an excessively high filing fee for candidates. The Court's rationale was that this restriction had the indirect impact of giving to affluent voters a greater freedom of choice in voting than that afforded to voters of more limited economic resources.[3] Since the compelling interest standard had been applied to statutory schemes which discriminated directly against voters according to economic status,[4] the *Bullock* Court held that the same standard should be applied when voter discrimination by economic status was the indirect result of the statutory scheme directed at candidates.

The reasoning of the *Bullock* Court leads us to the conclusion that the compelling interest standard is applicable to a statutory restriction on candidacy if that restriction has an indirect discriminatory impact of the sort which, had it resulted directly from a statute limiting the right to vote, would require application of the stricter standard of review to that statute.

The statute under consideration here has the indirect impact of limiting the right to vote on the basis of age since the candidates excluded are those most likely to be favored by young citizens. See, Bullock v. Carter, *supra*, 405 U.S. at p. 144, 92 S.Ct. 849. Thus, we are brought to the question of whether a state limitation on the right to vote based on age must meet the compelling interest test in order to satisfy the requirements of the Fourteenth Amendment.

The Supreme Court most recently discussed this question in Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed. 2d 272 (1970), in which the Court upheld portions of the Voting Rights Act of 1965. Five Justices, who were not otherwise in agreement with one another as to the Court's holding in the case, nevertheless constituted a majority on the question of the application of the Equal Protection Clause to state age qualifications on the right to vote. Justice Stewart, in an opinion joined in by Chief Justice Burger and Justice Blackmun, pointed out that in all prior decisions on the subject, the Court had "been careful . . . to note the undoubted power of a State to establish a qualification for voting based on age". *Id.* at 294, 91 S.Ct. at 349. Justice Stewart added that "to test the power to establish an age qualification by the 'compelling interest' standard is really to deny a State any choice at all, because no State could demonstrate a 'compelling interest' in drawing the line with respect to age at one point rather than another". *Id.* Justice Black went even further and stated that "[t]he establishment of voter age qualifications is a matter of legislative judgment which cannot be properly decided under the Equal Protection Clause". *Id.* at 127, n. 10, 91 S.Ct. at 266. Justice Harlan agreed with Justice Black on the question of qualifications based on age, stating "that the Fourteenth Amendment

---

3. The Court stated: "Not only are voters substantially limited in their choice of candidates, but also there is the obvious likelihood that this limitation would fall more heavily on the less affluent segment of the community, whose favorites may be unable to pay the large costs required by the Texas system." 405 U.S. at 144, 92 S.Ct. at 856.

4. Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169. MacDonald v. Board of Education, 394 U.S. 802, 807 n. 21, 89 S.Ct. 1404, 22 L.Ed.2d 739.

**924**

was never intended to restrict the authority of the States to allocate their political power as they see fit". *Id.* at 154, 91 S.Ct. at 280. It obviously follows, from the positions of Justices Black and Harlan, that a State need not support its statutory age qualifications on the right to vote by showing a compelling state interest. This, then, was the majority position of the Court in Oregon v. Mitchell and is binding on this court.[5]

Accordingly, we find that the stricter standard is not applicable to age limitations on eligibility to run for office, and need not be applied to the statute in question here.

Resolution of this threshold question of the applicable standard of review, in effect, disposes of Plaintiffs' claim since, as Plaintiffs concede, "if the Defendants merely have to show a rational or reasonable basis" for the classification established by the statute, "such a basis could be found . . .". (Plaintiff's brief, p. 5). Two such bases are apparent to this court: First, the requirement excluding minors under the age of eighteen (18) from a place on the Board of Education assures some measure of maturity in Board members. The State has a clear interest in the maturity of its office holders, just as it has an interest in the maturity of its voters. YMCA Vote at 18 Club v. Board of Elections of the City of N.Y., 319 F.Supp. 543 (S.D.N.Y.1970). Second, the State has an interest in assuring that its school board members will have reached the age of majority in order to have the legal capacity to transact the business of the Board, which may include signing contracts. In Michigan, the attainment of "full age" is a prerequisite to competency to enter into contracts. In re Es-

tate of Meredith, 275 Mich. 278, 290, 266 N.W. 351 (1936). Thus the age distinction made in the statute has a sufficiently rational basis for a presumption of constitutionality to attach to it. See, McGowan v. Maryland, *supra*, 366 U.S. at 425–428, 81 S.Ct. 1101.

There being no genuine issue of material fact, and it appearing that Plaintiffs, as a matter of law, are not entitled to the relief prayed for in the complaint, the Defendants' motion for summary judgment shall be granted.

It is so ordered.

---

5. This view is consistent with a long line of Supreme Court decisions which have concluded that the state "has the undoubted power to fix a reasonable minimum age for the exercise of the franchise". YMCA Vote at 18 Club v. Bd. of Elections of City of N. Y., 319 F.Supp. 543 (S.D.N.Y.1970). See also Kramer v. Union Free School Dist. No. 15, 395 U.S. 621, 625, 637, 89 S.Ct. 1886, 23 L.Ed.2d 583; Harper v. Virginia State Board of Education, 383 U.S. 663, 673, 675 n. 4, 86 S.Ct. 1079, 16 L.Ed.2d 169 (dissent); Gray v. Sanders, 372 U.S. 368, 380–381, 83 S.Ct. 801, 9 L.Ed.2d 821; Lassiter v. Northampton County Election Board, 360 U.S. 45, 51, 79 S.Ct. 985, 3 L.Ed.2d 1072.