**John STILES, Appellant,**

v.

**Roy D. BLUNT, William L. Webster, Appellees.**

No. 90–1512.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1990.

Decided Aug. 24, 1990.

.. 

that (1) the district court erred in reviewing the minimum age requirement for Missouri State Representative under the rational relationship standard of equal protection review; (2) that even assuming rational relationship review is appropriate, the district court erred in holding that the minimum age requirement is rationally related to legitimate state interests; and (3) the district court erred in refusing to calculate his age from the date of conception in accordance with Mo.Ann.Stat. § 1.205 (Vernon Supp. 1990) (Section 1.205), the preamble to the Missouri Senate Committee Substitute for House Bill 1596 (1986 Missouri Abortion Act), which states that life begins at conception. For the reasons discussed below, we affirm the order of the district court.

## I.

The facts of this case are undisputed. On January 9, 1990, appellant made a timely offer to file his declaration of candidacy for Missouri State Representative on the Democratic ballot. The Secretary of State acknowledged receipt of appellant's declaration of candidacy, but refused to certify him as a candidate because he would not be 24 years old on the date he would be sworn into office as required by Mo. Const. Art. III, § 4 (Vernon 1970) and Mo.Ann.Stat. § 21.080 (Vernon 1970 & Supp.1990) (Section 21.080).

Appellant's date of birth is April 11, 1967, and his date of conception is prior to November 1, 1966. Appellant is a resident of Windsor, Missouri, in Henry County, and is a taxpayer and a registered and qualified voter of Windsor, which is located in the 119th Legislative District. Appellant is a member of the Democratic party, and except for his age, is otherwise qualified to hold the office of Missouri State Representative. If appellant won the election, he would be sworn in and begin serving his term on approximately November 1, 1990. Calculating appellant's age from his date of birth, he will be a little over 23½ years old on November 1, 1990.

Roger G. Brown, Jefferson City, Mo., for appellant.

Deborah Ground Buckner, Jefferson City, Mo., for appellees.

Before McMILLIAN and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

John A. Stiles (appellant) appeals from a final order entered in the United States District Court for the Western District of Missouri[1] denying his motion for a preliminary injunction to prevent Roy Blunt, the Secretary of State of the State of Missouri, and William Webster, Attorney General of the State of Missouri (appellees), from refusing to certify him as a Democratic candidate in the August 1990 primary for the Missouri House of Representatives and dismissing his cause of action for failure to state a claim upon which relief could be granted. For reversal, appellant argues

1. The Honorable Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri.

The parties stipulate that qualified voters in the 119th Legislative District, though not parties to this lawsuit, have indicated a willingness to vote for appellant if he ran for office. The district court also held that the Missouri House of Representatives seated persons under the age of 24 on four occasions between 1824 and 1935.[2]

On February 12, 1990, appellant filed a Petition for Declaratory Judgment and Injunctive Relief ("Petition") in federal district court, alleging that the minimum age requirement violated the equal protection clause because it deprived him of his right to run for public office and violated his fundamental rights of speech, association and travel. Appellant also contended that the minimum age requirement violated the fundamental rights of the voters interested in supporting him. In the alternative, appellant argued that his age should be calculated from the date of his conception rather than his date of birth, which, according to Section 1.205 is when life begins.

After holding an evidentiary hearing, the district court denied appellant's requests for declaratory and injunctive relief and dismissed his petition for failure to state a claim upon which relief could be granted. The district court held that the minimum age requirement did not violate appellant's constitutional rights or the fundamental rights of the voters of the 119th Legislative District to free speech, voting, and participation in government. The district court further held that appellant's age should be calculated from his date of birth, not from his date of conception pursuant to Section 1.205. Appellant filed a timely appeal of the district court order, and, pursuant to appellant's request, we expedited our consideration of this appeal.

## II.

The minimum age requirement for State Representative is set forth in the Missouri Constitution:

> Each [state] representative shall be *twenty-four years of age*, and next before the day of his election shall have been a qualified voter for two years and a resident of the county or district which he is chosen to represent for one year, if such county or district shall have been so long established, and if not, then of the county or district from which the same shall have been taken.

Mo. Const. Art. III, § 4 (emphasis added).[3] This constitutional requirement is codified at Section 21.080. Missouri does not have minimum age requirements for the statewide offices of Secretary of State, State Treasurer, or State Attorney General but Article IV, Section 3 of the Missouri Constitution does require that the Governor be at least 30 years of age. This is the first time that the constitutionality of Missouri's minimum age requirement has been challenged, but other provisions of Art. III, § 4 and Mo.Ann.Stat. § 21.080 have been contested and upheld in the past.[4]

### A. Standard of Review

When a litigant challenges a governmental classification under the equal protection clause, we must first determine the appropriate standard of review. Deter-

2. Spencer Pettis, age 22, of St. Louis, was seated in 1824; John B. Henderson, age 22, of Pike County, was seated in 1848; Joseph Pulitzer, age 22, of St. Louis, was seated in 1870; and Carleton Fulbright, age 22, of Ripley County, was seated in 1935. The record does not reflect why these individuals were seated in violation of the minimum age requirement.

3. Missouri has required that state representatives be at least 24 years old since 1820, when a provision similar to Art. III. § 4 was included as Art. III, § 3 of the Missouri Constitution of 1820.

4. For example, in *Steinmetz v. Smith*, 613 S.W.2d 157, 158 (Mo.Ct.App.1981), the Missouri Court of Appeals held that a trial court has jurisdiction to prevent the Board of Election Commissioners from placing the name of an unqualified candidate on the ballot and, pursuant to Mo.Ann.Stat. § 21.080, a nominee who was not a qualified voter two years before the date of election was not a qualified candidate for the office of Missouri State Representative. In *State ex rel. Burke v. Campbell*, 542 S.W.2d 355, 358 (Mo.Ct.App.1976), the Missouri Court of Appeals noted that the state may establish and enforce reasonable restrictions for officeholders, and held the requirement in Art. III, § 4 that a candidate for state representative be a qualified voter in the state for two years prior to the election did not deny equal protection.

mining the proper standard of review is of more than academic interest because the level of scrutiny applied often effectively determines whether a challenged classification is upheld.[5] There are three primary levels of equal protection review. The most deferential level of review is the rational relationship test, which is typically used to analyze economic regulations not involving suspect classes or fundamental rights. Under this test, a challenged classification "will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *see also Allied Stores, Inc. v. Bowers*, 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1957). The rational relationship test accords substantial deference to the government both in determining what constitutes a legitimate governmental objective and in selecting the means to accomplish the chosen objective.[6] Under the rational relationship test, we will uphold a challenged classification so long as it bears a rational relationship to a governmental objective not prohibited by the Constitution.

"Strict scrutiny" is the most exacting standard of equal protection review. Strict scrutiny review is applied when a challenged classification affects a fundamental constitutional right or a suspect class. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (per curiam) (*Murgia*). Under this standard, we will uphold a classification only if it is "necessary to promote a compelling state interest." *Kramer v. Union Free School District No. 15*, 395 U.S. 621, 627, 89 S.Ct. 1886, 1890, 23 L.Ed.2d 583 (1969). Unlike rational relationship review, where the classification is presumed constitutional and the plaintiff bears the burden of proving otherwise, the strict scrutiny test requires the government to prove that it has a compelling interest in the classification it has selected. *See Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969).

Although the Supreme Court has been reluctant to explicitly acknowledge a third level of equal protection review, it has on occasion applied what can be characterized as an intermediate level of review to classifications involving gender, alienage, or legitimacy.[7] Under this standard, the challenged classification must be "substantially related" to "important governmental objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976). In recent years, the Supreme Court has further muddied the doctrinal waters by sometimes reviewing the legitimacy of challenged classifications without stating a clear standard of review. *See* 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law: Substance and Procedure* § 18.3, at 328 (citing cases) (1986). Keeping this overview in mind, we address the appropriate standard of review in this case.

5. Classifications reviewed under the rational relationship are almost invariably upheld. In contrast, when a classification is subjected to strict scrutiny, it is almost always found unconstitutional. *See* Gunther, *The Supreme Court, 1971 Term—Foreward: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection*, 86 Harv.L.Rev. 1, 8 (1972) (strict scrutiny review is "strict" in form but usually "fatal" in fact).

6. L. Tribe, American Constitutional Law § 16–2, at 1442–43 (2d ed.1988) ("[t]he traditional deference *both* to legislative purpose *and* to legislative selections among means continues, on the whole, to make the rationality requirement largely equivalent to a strong presumption of constitutionality") (emphasis in original) (citing cases).

7. *See e.g., Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976) (intermediate scrutiny applied to gender classification permitting females between 18 and 21 to purchase 3.2% beer while denying the same privilege to males between 18 and 21); *Plyler v. Doe*, 457 U.S. 202, 223–24, 102 S.Ct. 2382, 2397–98, 72 L.Ed.2d 786 (1982) (intermediate scrutiny applied to Texas statute withholding state funds for the education of children of undocumented aliens and authorizing local school districts to exclude such children); *Mills v. Habluetzel*, 456 U.S. 91, 99, 102 S.Ct. 1549, 1555, 71 L.Ed.2d 770 (1982) (intermediate scrutiny applied to Texas statute of limitations requiring that paternity suits to identify natural fathers of illegitimate children be brought before the child is one year old).

Appellant argues that the minimum age requirement should be subjected to strict scrutiny review because the requirement affects a suspect class and infringes on fundamental rights. Appellant argues that age is a suspect class and that the requirement impinges on his fundamental right to be a candidate as well as the voters' fundamental right to support the candidate of their choice. Appellant argues that because the minimum age requirement restricts the voters' choice of candidates, it is similar to state statutes restricting ballot access, which have been subjected to strict scrutiny review. *See Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) *(Bullock)* (filing fee for primary elections); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (minimum signature requirement for ballot access); *Harper v. Virginia State Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (poll tax). Appellant argues that the age requirement should be at least subjected to intermediate scrutiny or reviewed under the balancing test for election regulation cases set forth in *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983) *(Anderson).*[8]

Appellees respond that rational relationship review is appropriate because neither a suspect class nor a fundamental right is implicated by the minimum age requirement. Citing *Murgia,* 427 U.S. at 313, 96 S.Ct. at 2567, the appellees first point out that the Supreme Court has never recognized age to be a suspect class. Appellees further contend that age restrictions affecting young adults should be reviewed with particular deference because they merely postpone rather than absolutely prohibit the enjoyment of a right. Appellees next argue that the right to run for office, unlike the right to vote, is not a fundamental right. Appellees contend that the voting restriction and ballot access cases cited by appellant are inapplicable

here, because this is a candidate qualification case rather than a ballot access case. Appellees point out that states are permitted broad latitude in regulating and supervising the state election process, and that both the states and the federal government have traditionally imposed age requirements on candidates and voters. Appellees contend that imposing strict scrutiny review on its minimum age requirement would result in undue interference with the state's right to structure its own electoral process.

Because neither a suspect class nor a fundamental right is implicated by the minimum age requirement, we hold that the district court was correct in reviewing Art. III, § 4 and Section 21.080 under the rational relationship test. First, it is abundantly clear that age is not a suspect class that triggers strict scrutiny review. In *Murgia,* the Supreme Court upheld a statute requiring uniformed police officers to retire at the age of 50. 427 U.S. at 316–17, 96 S.Ct. at 2568–69. The Court held that classification by age "does not define a 'discrete and insular' group, *United States v. Carolene Products Co.,* 304 U.S. 144, 152–53 n. 4, 58 S.Ct. 778, 783–84 n. 4, 82 L.Ed. 1234 (1938), in need of 'extraordinary protection from the majoritarian political process.'" *Id.* 427 U.S. at 313, 96 S.Ct. at 2567. Following *Murgia,* courts have routinely reviewed age classifications under the rational relationship test. *See, e.g., Gregory v. Ashcroft,* 898 F.2d 598, 604 (8th Cir.1990) (Missouri mandatory retirement requirement for state judges); *Zielasko v. State of Ohio,* 873 F.2d 957, 961 (6th Cir. 1989) (Ohio mandatory retirement requirement for state judges); *Price v. Cohen,* 715 F.2d 87, 92 (3d Cir.1983) (Pennsylvania statute disfavoring welfare recipients between ages of 18 and 45), *cert. denied,* 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 700 (1984); *Arritt v. Grisell,* 567 F.2d 1267, 1272 (4th Cir.1977) (West Virginia statute requiring that police officer applicants be between

8. In *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570 (1983) *(Anderson),* the Supreme Court held that when state election regulations burden the *voters'* rights to associate or choose among candidates, courts must identify

the state's interests in the regulation, the burdens imposed on the voters by the regulation, and balance the respective benefits and burdens to determine if the regulation is constitutional.

the ages of 18 and 35). Furthermore, we agree with the state that it is particularly appropriate to apply a deferential standard of review to age requirements affecting young people because such requirements do not result in an absolute prohibition but merely postpone the opportunity to engage in the conduct at issue. *See Zielasko*, 873 F.2d at 962 (Jones, J., dissenting) (minimum age requirements only temporarily burden a right); *Felix v. Milliken*, 463 F.Supp. 1360, 1373 (E.D.Mich.1978) ("while discrimination against the elderly at a particular age imposes a disability that is never removed, drawing lines that affect young people has only a temporary effect").

The minimum age requirement also does not affect a fundamental right. Contrary to appellant's assertion, the right to run for public office, unlike the right to vote, is not a fundamental right. *Bullock*, 405 U.S. at 142–43, 92 S.Ct. at 855–56. *See Zielasko*, 873 F.2d at 961; *Hatten v. Rains*, 854 F.2d 687, 693 (5th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989). Nor is strict scrutiny review appropriate based on the alleged impingement on the choice of candidates available to the *voters* of the 119th Legislative District. To begin with, we are unpersuaded that appellant has standing to raise the voters' claims. While the parties have stipulated that qualified voters in the 119th Legislative District are interested in voting for appellant, no such voter has joined this action as a party plaintiff. In those cases that assess the impact of candidate eligibility requirements on the rights of voters, one or more voters supporting the candidate are typically parties to the action. *See, e.g., Anderson*, 460 U.S. at 783, 103 S.Ct. at 1567 (suit brought by independent presidential candidate John Anderson and three registered voters); *Bullock*, 405 U.S. at 136, 92 S.Ct. at 852 (voters supporting

candidates intervened in action); *Zielasko*, 873 F.2d at 958 (registered voter supporting candidacy of Judge Zielasko a plaintiff in action). In order to avoid unnecessary or imprudent adjudications, we ordinarily prohibit litigants from raising the claims of third parties not before the court. *See Singleton v. Wulff*, 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976) (plurality opinion). The prohibition of third party standing is relaxed when the litigant is "the only effective adversary" of the third party's rights. *See Barrows v. Jackson*, 346 U.S. 249, 259, 73 S.Ct. 1031, 1036, 97 L.Ed. 1586 (1953). However, appellant has not explained why no voter from the 119th Legislative District has joined the suit or why he is the only effective adversary of the voters' rights. *See Whitmore v. Arkansas*, —— U.S. ——, 110 S.Ct. 1717, 1727, 109 L.Ed.2d 135 (1990) (for "next friend" standing in habeas corpus actions, next friend must provide an adequate explanation why the real party in interest cannot prosecute the action on his or her own behalf). Our serious doubts about appellant's standing to raise the voters' claims are not resolved by the inclusion of affidavits from qualified voters in the 119th Legislative District in his Petition, or by the district court's observation that qualified voters wish to consider appellant as a candidate when they vote for Missouri State Representative.

Even assuming that appellant has standing to raise the voters' claims, we hold that we need not apply heightened scrutiny to the minimum age requirement because its impact on the rights of voters is *de minimus*. Like virtually all election regulations, the minimum age requirement does have some effect on the rights of voters.[9] We acknowledge that the minimum age requirement tends "to limit the field of candidates from which voters might choose," *Bullock*, 405 U.S. at 143, 92 S.Ct.

---

**9.** In *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972), the Supreme Court discussed the interrelationship between candidate eligibility requirements and the fundamental rights of voters:

> [T]he rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on

> voters. Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review.... In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.

405 U.S. at 143, 92 S.Ct. at 856 (citations omitted).

at 856, but find the burden on the voters' rights to be incidental for two major reasons. First, the burden is only temporary. Appellant is not forever precluded from running for state representative. Should he decide to run for state representative after he attains 24 years, voters interested in supporting him can vote for him at that time. While it is true that voters will not be able to vote for appellant in this year's election, their fundamental rights of voting, speech, and association do not confer upon them an absolute right to support a specific candidate regardless of whether he or she has satisfied reasonable eligibility requirements. *See Zielasko,* 873 F.2d at 961 ("no one is guaranteed the right to vote for a specific individual"). Secondly, and more important, the minimum age requirement is content neutral and applies to candidates of all political parties. The requirement does not deprive voters of their rights to vote for, associate with, or speak out on behalf of candidates representing minor parties or unusual view points. *See Anderson,* 460 U.S. at 787, 103 S.Ct. at 1569 ("[t]he right to vote is heavily bur-

dened if that vote may be cast only for major party candidates at a time when other parties or other candidates are clamoring for a place on the ballot") (citations omitted); *Blassman v. Markworth,* 359 F.Supp. 1, 7 (N.D.Ill.1973) (*Blassman*) (minimum age requirement for school board membership not "shown to preclude or substantially narrow the field of candidates who espouse any given political, ideological, and/or socio-economic views"). Accordingly, we join the other courts that have considered this issue in holding that minimum age requirements need only rationally further a legitimate state interest to be constitutional.[10] *See Manson v. Edwards,* 482 F.2d 1076, 1078 (6th Cir.1973); *Human Rights Party v. Secretary of State of Michigan,* 370 F.Supp. 921, 924 (E.D.Mich.), *aff'd,* 414 U.S. 1058, 94 S.Ct. 563, 38 L.Ed.2d 465 (1973); *Blassman,* 359 F.Supp. at 6–8.[11]

**B. Application of Rational Relationship Test**

■ Having determined that rational relationship review is appropriate, we have

10. Assuming that appellant has standing to raise the voters' claims, the author believes that it is more appropriate to analyze the minimum age requirement under the *Anderson* balancing test. I believe the Supreme Court intended the *Anderson* test to be applied whenever election regulations allegedly affect a citizen's "right to vote and his right to associate with others for political ends." 460 U.S. at 788, 103 S.Ct. at 1570. Even under the *Anderson* test, however, the minimum age requirement passes constitutional muster. Under *Anderson,* the nature and magnitude of the burden imposed by the minimum age requirement must first be considered. *Id.* at 789, 103 S.Ct. at 1570. Appellant has been deprived of the right to be a candidate for the Missouri legislature, but only temporarily. Unlike the right to vote, the right to run for office is not a fundamental right. Likewise, voters in the 119th Legislative District will be temporarily deprived of the opportunity to vote for appellant and individuals in appellant's age group. Although the right to vote is fundamental, citizens do not have a fundamental right to vote for any particular candidate. Moreover, the age requirement does not favor or disfavor particular viewpoints or political parties. The second factor considered under *Anderson* is the state interest served by the regulation. *Id.* The minimum age requirement serves Missouri's interest in insuring that its legislators have some degree of maturity and life experience before taking

office. This is a legitimate interest. Although appellant may well possess sufficient maturity to hold office, the state's interest in maturity and experience entitles it to draw the line somewhere, and the line it has drawn is not unreasonable. Application of the *Anderson* balancing test establishes that the minimum age requirement imposes only temporary, incidental burdens on the rights of appellant and the voters, which are justified by the state's interest in insuring that its legislators possess some maturity and experience.

11. For the same reasons, we disagree with appellant's argument that the minimum age requirement should at least be subjected to intermediate equal protection scrutiny. As demonstrated above, the minimum age requirement does not affect a suspect class or a fundamental right. At most, it causes an incidental, temporary burden on the rights of appellant and the voters. We also decline appellant's invitation to recognize age as a quasi-suspect class or the right to be a candidate for public office as a quasi-fundamental right. Because the Supreme Court has never enthusiastically embraced intermediate equal protection review and has refused to extend it beyond classifications affecting gender, illegitimacy, and alienage, we are unwilling to apply intermediate scrutiny to new areas without guidance from the Supreme Court.

little trouble in conceiving of legitimate state interests that are served by the minimum age requirement. Appellant contends that even if rational relationship review is appropriate, the minimum age requirement should fall because it does not further a legitimate governmental objective. Appellant contends that the state has failed to articulate any interest that is advanced by the requirement. Appellant argues that the minimum age requirement does not meet the rational relationship test because most other states do not require state representatives to be 24 years old and because the requirement excludes qualified candidates who could strengthen the political process by filling candidate slots in uncontested elections. Appellant further contends that the minimum age requirement is not rational because it has been arbitrarily enforced and does not apply to statewide offices. Appellees respond that the minimum age requirement is rationally related to its legitimate interest in having lawmakers with maturity and experience. Appellees further point out that the minimum age requirement can be changed by a constitutional amendment, and argue that the issue should be left to the political process.

We agree with the district court's holding that the minimum age requirement is rationally related to the state's legitimate interest in having qualified representatives. Missouri's objective of insuring that its lawmakers have some degree of maturity and life experience is constitutional and the minimum age requirement is a legitimate means of accomplishing this objective. Of course, whether or not these reasons were actually considered in enacting the minimum age requirement is irrelevant. *Zielasko*, 873 F.2d at 961. Similarly, whether we believe the state "was unwise in not choosing means more precisely related to its primary purpose is irrelevant.... That th[is] reason[ ] at least arguably provide[s] a rational basis for [the minimum age requirement] is sufficient for [Mo. Const. Art. III, § 4 and Section 21.080] to survive under the constitutional standard we have described." *Id.* at 961–62 (citations omitted).

We are unmoved by appellant's contention that the minimum age requirement is irrational because Missouri is one of only seven states that imposes an age requirement in excess of 21 years on the right to run for state representative. We are not permitted to substitute our view of what year an individual should be permitted to run for state representative. *See Blassman*, 359 F.Supp. at 8. The issue of whether the minimum age should be 18, 21, 24, or some other age is a classic example of legislative line-drawing that we must leave undisturbed. The minimum age requirement is also not irrational even if it restricts the pool of qualified candidates and makes it more difficult to recruit candidates, thus resulting in more uncontested elections which weaken the vitality of the political process. While contested elections may indeed enhance the responsiveness and robustness of our political system, we believe that these arguments are best made to the Missouri legislature or the Missouri citizens in the context of an effort to amend the Missouri Constitution. We are not permitted to substitute our policy judgment for that of the state under the guise of applying the rational relationship test. The *Blassman* decision expresses this point well:

> [W]ere we to strike down the age minimum requirement here, we would be accomplishing nothing more than substituting our judgment for that of the Illinois legislature.... Although there might be, as plaintiffs suggest, reasons why the present age minimum is undesirable and good reasons why someone old enough to vote should be old enough to serve on a local school board, those reasons should be presented to the legislature, not to a court.

*Id.*

We are similarly unpersuaded that four unexplained seatings of underage legislators in the past 170 years amount to an arbitrary enforcement of the minimum age requirement that robs it of its rationality. First, these allegedly improper seatings appear to be isolated mistakes. Seatings of underage legislators have occurred only four times in the last 170 years, the most

recent being 55 years ago. The circumstances that might have contributed to the improper seatings are not reflected in the record. For example, appellant has failed to proffer any evidence that the underage legislators were seated because they belonged to the same political party as the Secretary of State. Because there is no explanation of why these representatives were seated, we can only speculate about what caused these four errors. Perhaps there were inadequate birth records or perhaps the Secretary of State failed to check candidate filings for compliance with the minimum age requirement on these four occasions. In the absence of a showing that the minimum age requirement has been selectively enforced to secure partisan political advantage or to exclude representatives based on their exercise of fundamental rights or membership in a suspect class, we hold that the four improper seatings between 1824 and 1935 do not deprive the minimum age requirement of its rationality.

Finally, the minimum age requirement does not fun afoul of the rational relationship test merely because the statewide offices of Secretary of State, State Treasurer, and the State Attorney General do not have minimum age requirements. In the absence of an unconstitutional objective or an impermissible means, a state's decision of whether or not to establish a minimum age requirement and what minimum age it designates are policy judgments for the legislature and voters. The framers of the Missouri Constitution were certainly entitled to make the policy judgment that a minimum age requirement was necessary for membership in the Missouri legislature but not for statewide offices. *See Vance v. Bradley*, 440 U.S. 93, 102, 99 S.Ct. 939, 945, 59 L.Ed.2d 171 (1979) ("[t]he judgment that the Foreign Service needs [an unusually stringent mandatory retirement policy] more than do many other departments is one of policy, and this kind of policy, under our constitutional system, ordinarily is to be fixed only by the people acting through their elected representatives") (citation omitted). For example, the framers could have believed that a minimum age requirement was not necessary for the statewide offices because all qualified voters cast ballots for these offices and there is likely to be more competition and greater scrutiny of candidates running for such positions. Even assuming that Missouri would be more likely to accomplish its objective of ensuring experienced lawmakers by imposing a minimum age requirement on all political offices, the state certainly has the right to proceed one step at a time. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

Accordingly, we hold the minimum age requirement is rationally related to the state's legitimate interest in a mature and experienced legislature.

### C. Calculation of Life from Date of Conception

■ Appellant's final contention is that, even assuming the minimum age requirement is constitutional, his age should be calculated from the date of his conception pursuant to Section 1.205.[12] If appellant's age were calculated from the date of his conception, he would be 24 years old at the time he began serving as state representative because his date of conception is prior to November 1, 1966. Section 1.205 includes certain findings made by the Missouri General Assembly that life begins at conception and unborn children have protectable interests in life, health, and well-being. Mo.Ann.Stat. § 1.205.1(1); *id.* § 1.205.2. The preamble further requires that the laws of Missouri be "interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons, citizens, and residents of this state." Mo.Ann.Stat. § 1.205.2.

Appellant is asking us to do what the Supreme Court declined to do. In *Webster v. Reproductive Health Services,* —— U.S.

---

12. Section 1.205 codifies the preamble to the Missouri Senate Committee Substitute for House Bill 1596, which was signed into law by the Governor of Missouri in 1986. *See Webster v. Reproductive Health Services,* —— U.S. ——, 109 S.Ct. 3040, 3047, 106 L.Ed.2d 410 (1989).

——, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) (*Webster*), the Supreme Court refused to decide whether Section 1.205 imposed impermissible restrictions on a woman's decision of whether to terminate her pregnancy. The Court held that "the extent to which the preamble's language might be used to interpret other state statutes or regulations is something that only the courts of Missouri can definitively decide." *Id.* 109 S.Ct. at 3050. Appellant has presented no evidence that the state legislature intended to change the sensible and time-honored method of calculating age when it enacted Section 1.205. Age has always been calculated from the date of birth, which, unlike the precise date of conception, can be determined with certainty. Because appellant urges us to adopt a counterintuitive and potentially confusing method of calculating age, we believe it is particularly imperative to follow *Webster* and leave it to the Missouri courts to decide what legal effect, if any, to give to the preamble to the 1986 Missouri Abortion Act. We therefore affirm the district court's decision that appellant's age should not be calculated from his date of conception pursuant to Section 1.205.

## CONCLUSION

To summarize, we hold that the minimum age requirement should be evaluated under the rational relationship standard of equal protection review, that the age requirement rationally furthers the state's legitimate interest in ensuring mature and experienced legislators, and that appellant's age should be calculated from his date of birth rather than from his date of conception. Accordingly, the order of the district court is affirmed.