In re the CUSTODY OF
J.J.S., minor child.

**Paul John Hassinger, petitioner,
Appellant,**

v.

**Kerry Lynne Seeley, Respondent,**

**County of Olmsted, Intervenor
Respondent,**

**State of Minnesota, Intervenor.**

No. A04–2477.

Court of Appeals of Minnesota.

Jan. 3, 2006.

Thomas B. James, Cokato, MN, for appellant.

Michael J. Spindler–Krage, Carole A. Pasternak, Klampe, Delehanty & Morris, Rochester, MN, for respondent Kerry Lynne Seeley.

Elizabeth L. Laroque, Senior Assistant County Attorney, Rochester, MN, for respondent County of Olmsted.

Ericka Sue Schneller Sullivan, St. Paul, MN, for intervenor Human Services Dept.

Mike Hatch, Attorney General, St. Paul, MN, for intervenor State of Minnesota.

Considered and decided by KALITOWSKI, Presiding Judge; TOUSSAINT, Chief Judge; and HALBROOKS, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant challenges the district court's order denying his motion for a declaration that Minn.Stat. § 257.75 (2004) and Minn. Stat. § 257.541 (2004) are unconstitutional and that joint physical custody is preferred and the order awarding respondent sole physical custody of the parties' son. Because we see no error of law in the denial of appellant's motion and no abuse of discretion in the custody award, we affirm.

## FACTS

Appellant Paul Hassinger and respondent Kerry Seeley lived together in a relationship for about ten months. They separated in May 2003. In September 2003, respondent gave birth to J.J.S., who has lived with her all his life. In December 2003, a paternity test showed that appellant is the father of J.J.S., and in January 2004 the parties filed a recognition of parentage form.

Respondent Olmsted County brought an action for child support against appellant, and appellant brought an action for joint legal and physical custody of J.J.S., arguing that Minn.Stat. § 257.75 (2004) and Minn.Stat. § 257.541 (2004) are unconstitutional and that joint custody should become the preferred custody option. The district court rejected both arguments and awarded respondent sole physical custody of J.J.S. Appellant challenges both the rejection of his arguments and the custody award.

## ISSUES

I. Is the appropriate standard of review for a statute that classifies on the basis of gender whether the classification serves an important governmental objective and is substantially related to the achievement of that objective?

II. Do Minn.Stat. § 257.75 (2004) and Minn.Stat. § 257.541 (2004) violate the equal protection clause of the Constitution?

III. Did the district court abuse its discretion in awarding sole physical custody of the parties' child to respondent?

## ANALYSIS

### I.

*Standard of Review*

■ There are three primary levels of equal protection review. The most deferential level of review is the rational relationship test, which is typically used to analyze economic regulations not involving suspect classes or fundamental rights. Under this test, a challenged classification will not be set aside if any state of facts reasonably may be conceived to justify it. . . . "Strict scrutiny" is the most exacting standard of equal protection review. Strict scrutiny review is applied when a challenged classification affects a fundamental constitutional right or a suspect class. Under this standard, we will uphold a classification only if it is necessary to promote a compelling state interest. . . .

[T]he Supreme Court . . . has on occasion applied what can be characterized as an intermediate level of review to classifications involving gender, alienage, or legitimacy. Under this standard, the challenged classification must be substantially related to important governmental objectives.

*Stiles v. Blunt,* 912 F.2d 260, 263 (8th Cir.1990) (quotations and citations omitted). The Supreme Court has continued to apply intermediate scrutiny to equal protection challenges based on classifications involving gender. *See, e.g., Nguyen v. Immigration and Naturalization Serv.,* 533 U.S. 53, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) (applying intermediate scrutiny to statute providing different rules for those born abroad and out of wedlock to mothers who are U.S. citizens and those born abroad and out of wedlock to fathers who are U.S. citizens and holding that statute did not violate equal protection); *United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 2275, 135 L.Ed.2d 735 (1996) (applying intermediate scrutiny to right of Virginia Military Institute to admit only males).

■ In light of the federal precedents, we conclude that the appropriate standard of equal protection review for statutes that classify on the basis of gender is intermediate scrutiny, i.e., whether "the challenged classification [is] substantially related to important governmental objectives." *Stiles,* 912 F.2d at 263.

### II.

*Constitutionality*

■ Appellate courts presume Minnesota statutes are constitutional and exercise the power to declare a statute unconstitutional with extreme caution and only when necessary. *Associated Builders & Contractors v. Ventura,* 610 N.W.2d 293, 299 (Minn.2000).

■ Minn.Stat. § 257.541, subd. 1 (2004) provides that a biological mother who was not married to her child's father at the time of the child's conception or birth has sole physical custody of the child until paternity has been established. Minn.Stat. § 257.75, subd. 3 (2004), pro-

vides that the mother of a child whose father was not married to the mother at the time of the child's conception or birth has sole custody of the child until an order is entered granting custody to someone else. Appellant contends that, by giving sole physical custody of children born outside of marriage to mothers, the statutes violate equal protection. But "[t]he equal protection clauses of the United States and Minnesota Constitutions direct that all persons *similarly circumstanced* shall be treated alike." *In re Estate of Turner,* 391 N.W.2d 767, 769 (Minn.1986) (emphasis added). With respect to children born outside of marriage, the parents are not "similarly circumstanced": mothers are identifiable while fathers may not be identifiable. Moreover, "only invidious ... discrimination offends the constitution." *Id.* (quotation omitted). Given the inevitable and incontrovertible dissimilarity in their circumstances, there is no invidious discrimination in treating the mothers and fathers of children born outside of marriage differently by granting sole custody to mothers.

In the context of *Nguyen,* the Supreme Court addressed the argument that any statutory gender-based distinction between parents violates equal protection.

> To fail to acknowledge even our most basic biological differences—such as the fact that a mother must be present at birth but the father need not be—risks making the guarantee of equal protection superficial, and so disserving it. Mechanistic classification of all our differences as stereotypes would operate to obscure those misconceptions and prejudices that are real. The distinction embodied in the statutory scheme here at issue is not marked by misconception and prejudice, nor does it show disrespect for either class. The difference between men and women in relation to the birth process is a real one, and the

principle of equal protection does not forbid Congress to address the problem at hand in a manner specific to each gender.

*Nguyen,* 533 U.S. at 73, 121 S.Ct. at 2066. The Supreme Court has rejected that view that statutes based on the biological distinction between fathers and mothers necessarily violate equal protection.

■ Appellant also contends that the statutes violate equal protection because they discriminate on the basis of marital status, i.e., unmarried fathers are treated differently than married fathers. But this contention ignores the language of the statutes. Minn.Stat. § 257.541, subd. 2 (2004), and Minn.Stat. § 257.541, subd. 3 (2004), provide that fathers who were not married to the mothers of their children at the time of the children's conception or birth may seek parenting time and custody under chapter 518. Chapter 518 governs the custody of a child of married parents when the marriage dissolves. Thus, whether a child's parents are unmarried or married and dissolving their marriage, the child's custody is governed by chapter 518. Minn.Stat. § 257.541, subd. 2 and subd. 3, do not discriminate on the basis of marital status.

The challenged statutes are substantially related to the important governmental objective of ensuring that children born to unmarried parents are properly provided for. The statutes do not violate the equal protection clause.

### III.

*Custody Award*

■ A district court has broad discretion to provide for the custody of the parties' children. *Durkin v. Hinich,* 442 N.W.2d 148, 151 (Minn.1989). Currently, the law "leaves scant if any room for an

appellate court to question the trial court's balancing of best-interests considerations." *Vangsness v. Vangsness,* 607 N.W.2d 468, 477 (Minn.App.2000). The district court awarded respondent sole physical custody of J.J.S.

■ Appellant argues that Minnesota courts should adopt a presumption in favor of joint physical custody. But the prevailing law is contrary to his argument. *See, e.g., Nolte v. Mehrens,* 648 N.W.2d 727, 731 (Minn.App.2002) (noting that "joint physical custody is not preferred" and citing in support *Wopata v. Wopata,* 498 N.W.2d 478, 482–83 (Minn.App.1993) and *Peterson v. Peterson,* 393 N.W.2d 503, 506 (Minn.App.1986)); *Rosenfeld v. Rosenfeld,* 529 N.W.2d 724, 726 (Minn.App.1995) ("Joint physical custody is not a preferred custody arrangement due to the instability, turmoil, and lack of continuity inherent in such an arrangement and is not generally in a child's best interest"). Changing that law is beyond our scope of review. *See Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987). The district court did not err in rejecting appellant's argument that joint physical custody should be preferred.

■ Appellant does not address the merits of the district court's custody award and therefore arguably waives the issue. *See Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982) (issues not briefed on appeal are waived). But in the interests of completeness, we review that award. *See* Minn. R. Civ. P. 103.04 (this court may address any issue as the interests of justice may require).

The district court made findings as to each of the 13 factors set out in Minn.Stat. § 518.17, subd. 1 (2004) and the four factors set out in Minn.Stat. § 518.17, subd. 2 (2004). While many of the factors did not differentiate between the parties, a few factors did. The court found that respondent has been J.J.S.'s primary caretaker, that, since his birth, J.J.S. has lived in and adjusted to respondent's permanent and stable home, and that maintaining continuity in that home is desirable.

The district court also appointed a custody evaluator whose report supports the award of sole physical custody to respondent. The custody evaluator noted that, because respondent is already raising two other children, she has greater parenting skills and a longer parenting history than appellant, and J.J.S. benefits from interacting with respondent's other children, who live with her and J.J.S. The district court did not abuse its discretion in awarding sole physical custody of J.J.S. to respondent.

## DECISION

The appropriate standard of equal protection review for statutes that classify on the basis of gender is intermediate scrutiny, and we conclude that the challenged statutes meet that standard: they are substantially related to an important government objective. We see no basis for questioning the district court's balancing of the best-interest considerations and its award of sole physical custody to respondent.

**Affirmed.**