**Howard BLASSMAN et al., Plaintiffs,**

**v.**

**Harold MARKWORTH, Secretary of the Board of Education of High School District 207, Maine Township, County of Cook, State of Illinois, Defendant.**

**No. 73 C 610.**

United States District Court,
N. D. Illinois, E. D.

April 24, 1973.

---

Stuart R. Cohn and David Goldberger, The Roger Baldwin Foundation, Chicago, Ill., for plaintiffs.

Ralph Miller and Allyn J. Franke, Franke & Miller, Chicago, Ill., 'for defendant.

Before SWYGERT, Chief Circuit Judge, and DECKER and McGARR, District Judges.

## MEMORANDUM OPINION

DECKER, District Judge.

■ The relevant facts of this case are simple and essentially undisputed.

Plaintiff Howard Blassman is a nineteen-year old registered voter who resides in High School District 207, Maine Township, Cook County, Illinois. Mr. Blassman wishes to become an elected member of the District 207 Board of Education. The election will be held April 14, 1973. Plaintiffs Julian Yedor, aged twenty-one, and Robert Amedeo, aged nineteen, are registered voters who reside in District 207 and support the candidacy of plaintiff Blassman. According to the complaint filed in this cause, plaintiff Blassman is in all respects qualified to become a candidate for the aforesaid office except that he has not reached the age of twenty-one as required by Illinois statute. Ill.Rev. Stat. ch. 122, § 10–10. On that basis, defendant Harold Markworth, Secretary of the District 207 Board of Education, refused to accept plaintiff Blassman's nominating petitions and statement of candidacy. Plaintiffs allege that the foregoing statutory provision violates their rights to equal protection of the law, to associate freely and generally to enjoy their civil rights as protected by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Plaintiffs seek declaratory and injunctive relief barring enforcement of the Illinois statute by defendant Markworth. In accordance with provisions of 28 U.S.C. § 2281 et seq., a three-judge court was convened to consider the constitutionality of the statute in question.[1]

The principal argument advanced by plaintiffs is that because the twenty-one year old age minimum set forth in the Illinois statute is not supported by any "compelling state interest" it runs afoul of the First and Fourteenth Amend-

---

1. We find no basis for defendant's assertion that because plaintiff has "speedy and effective judicial remedies" in the state court, we should abstain from deciding the constitutional question presented here. There is no similar case pending in the state court and the statute is clear and unambiguous; clarification by a state court is unnecessary. See, Harman v. Forssenius, 380 U.S. 528, 535, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); Pontikes v. Kusper, 345 F. Supp. 1104, 1107 (N.D.Ill.1972).

ments.[2] Reliance is placed upon the general principle that:

> "Before a state can place any restrictions upon the freedom to associate freely and to vote, it must be shown that a compelling state interest justifies such regulation." Bendinger v. Ogilvie, 335 F.Supp. 572, 574 (N.D. Ill.1971).

Defendant takes the position that the statutory age requirement is both rationally related to its objective and supported by a compelling state interest. Accordingly, defendant has moved to dismiss the complaint.

■ While there has been some uncertainty as to the circumstances under which the courts must apply the "compelling interest" test in Fourteenth Amendment cases,[3] we do not disagree with plaintiffs' statement of the general principle. There is no question that recent decisions have established the principle that state action regulating suffrage is not immune from the impact of the Equal Protection Clause. However, those decisions were never intended to vitiate the traditional prerogatives of the states in governing their internal affairs. See, Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Kramer v. Union School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L. Ed.2d 583 (1969);[4] Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.

---

2. Plaintiff relies heavily on Manson v. Edwards, 345 F.Supp. 719 (E.D.Mich. 1972), wherein the court held that the provision of the Detroit City Charter, setting an age minimum of 25 years for all candidates for Common Council was an unconstitutional denial of equal protection. The court in that case applied the "compelling interest" test. While we find the case in some respects distinguishable because it involved a municipal representative position and the age minimum was set at 25 years of age rather than 21, to the extent the holding of that case conflicts with our decision here, we expressly disapprove of and refuse to follow it.

3. In dissent to a somewhat novel application of the "compelling interest" test, Justice Rehnquist recently stated that in his opinion the Supreme Court had accomplished "the seemingly impossible feat of leaving this area of the law more confused than it found it." Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (Rehnquist, J., dissenting.).

4. Kramer v. Union School District, *supra*, which is relied on by plaintiffs, is clearly inapposite. First, the case involved a direct restriction on the franchise based upon property rights. Secondly, the issue raised here was explicitly distinguished:

> "At the outset, it is important to note what is *not* at issue in this case. The requirements of § 2012 that school district voters must (1) be citizens of the United States, (2) be bona fide residents of the school district, and (3) be at least 21 years of age are not challenged. *Appellant agrees that the States have the power to impose reasonable citizenship, age, and residency requirements on the availability of the ballot.* (Emphasis added.) 395 U.S. at 625, 89 S.Ct. at 1888.

See also, Lassiter v. Northampton Election Board, 360 U.S. 45, 51, 79 S.Ct. 985, 990, 3 L.Ed.2d 1072 (1959), where Justice Douglas stated that:

> "[W]hile the right of suffrage is established and guaranteed by the Constitution (Ex parte Yarbrough, 110 U.S. 651, 663–665 [4 S.Ct. 152, 158, 159, 28 L.Ed. 274]; Smith v. Allwright, 321 U.S. 649, 661–662 [64 S.Ct. 757, 763–764, 88 L.Ed. 987]) it is subject to the imposition of state standards which are not discriminatory and which do not contravene any restriction that Congress, acting pursuant to its constitutional powers, has imposed. See United States v. Classic, 313 U.S. 299, 315 [61 S.Ct. 1031, 1037, 85 L.Ed. 1368]. While § 2 of the Fourteenth Amendment, which provides for apportionment of Representatives among the States according to their respective numbers counting the whole number of persons in each State (except Indians not taxed), speaks of 'the right to vote,' the right protected 'refers to the right to vote as established by the laws and constitution of the State.' McPherson v. Blacker, 146 U.S. 1, 39 [13 S.Ct. 3, 12, 36 L.Ed. 869].
>
> "We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction. Residence requirements, age, previous criminal record (Davis v.

**4**

Ed.2d 675 (1965). Cf. Amendment X, United States Constitution; Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct 260, 27 L.Ed.2d 272 (1970); Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L. Ed. 497 (1944). See also, McDonald v. Board of Election Commissioners of Chicago, 394 U.S. 802, 89 S.Ct. 1404, 22 L. Ed.2d 739 (1969). In declaring unconstitutional that portion of the Voting Rights Act Amendments of 1970, which had lowered the minimum voting age to eighteen years for state and local elections, Justice Black, delivering the majority opinion, stated:

"[T]he Constitution was also intended to preserve to the States the power that even the Colonies had to establish and maintain their own separate and independent governments, except insofar as the Constitution itself commands otherwise. My Brother Harlan has persuasively demonstrated that the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment,[8] the power to regulate

8. 'The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.' U.S.Const., Amdt. X

elections. My major disagreement with my Brother Harlan is that, while I agree as to the States' power to regulate the elections of their own officials, I believe, contrary to his view, that Congress has the final authority over federal elections. No function is more essential to the separate and independent existence of the States and their governments than the power to determine within the limits of the Constitution the qualifications of their own voters for state, county, and municipal offices and the nature of their own machinery for filling local public offices. Pope v. Williams, 193 U.S. 621 [24 S.Ct. 573, 48 L.Ed. 817] (1904); Minor v. Happersett, 21

Beason, 133 U.S. 333, 345–347, 10 S.Ct. 299, 301–302, 33 L.Ed 637) are obvious examples indicating factors which

Wall. 162 [22 L.Ed. 627] (1875). Moreover, Art. I, § 2,[9] is a clear indi-

9. 'The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.' 400 U.S. at 124–125, 91 S.Ct. at 265.

cation that the Framers intended the States to determine the qualifications of their own voters for state offices, because those qualifications were adopted for federal offices unless Congress directs otherwise under Art. I, § 4. It is a plain fact of history that the Framers never imagined that the national Congress would set the qualifications for voters in every election from President to local constable or village alderman. It is obvious that the whole Constitution reserves to the States the power to set voter qualifications in state and local elections, except to the limited extent that the people through constitutional amendments have specifically narrowed the powers of the States. Amendments Fourteen, Fifteen, Nineteen, and Twenty-four, each of which has assumed that the States had general supervisory power over state elections, are examples of express limitations on the power of the States to govern themselves. And the Equal Protection Clause of the Fourteenth Amendment was never intended to destroy the States' power to govern themselves, making the Nineteenth and Twenty-fourth Amendments superfluous. My Brother Brennan's opinion, if carried to its logical conclusion, would, under the guise of insuring equal protection, blot out all state power, leaving the 50 States as little more than impotent figureheads. In interpreting what the Fourteenth Amendment means, the Equal Protection Clause should not be stretched to nullify the States' powers over elections which they had before the Con-

a State may take into consideration in determining the qualifications of voters."

stitution was adopted and which they have retained throughout our history."

The difficulty in this case lies in the apparent anomaly between holding the states to a strict standard of scrutiny when regulation of the franchise is involved and, at the same time, supporting the principle that the states have the unfettered power to regulate the terms and mechanics of their own elections. Yet, the anomaly disappears if attention is directed to the specific "right" protected by the Fourteenth Amendment. Hence, even if this case involved a direct restriction on the right to vote, which it does *not*, we could not immediately resort to the compelling interest analysis. The reason is that there is no constitutionally protected right to vote *per se*. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

> "[T]he Equal Protection Clause confers the substantive right to participate on an equal basis with other qualified voters whenever the State has adopted an electoral process for determining who will represent any segment of the State's population. See, e. g., Reynolds v. Sims, 377 U.S. 533 [84 S.Ct. 1362, 12 L.Ed.2d 506]; Kramer v. Union School District, 395 U.S. 621 [89 S.Ct. 1886, 23 L.Ed.2d 583]; Dunn v. Blumstein, 405 U.S. 330, 336 [92 S.Ct. 995, 31 L.Ed.2d 274]. But there is no constitutional right to vote, as such. Minor v. Happersett, 88 U.S. 162 [22 L.Ed. 627]. If there were such a right, both the Fifteenth Amendment and the Nineteenth Amendment would have been wholly unnecessary." 93 S.Ct. 1310 (Opinion of Stewart, J.)

It must be emphasized that equal participation with other *qualified* voters implies that power is reserved to the states to establish some voter qualifications without "compelling interest" justification. The line may be difficult to draw in some cases, but it is at least clear that absent discrimination based on race, which however trifling is forbidden, the effect of the law must be "invidiously discriminatory" if it is to be proscribed by the Fourteenth Amendment. There is little question that, prior to the Twenty-sixth Amendment, age minimums, as long as they were reasonable, did not fall into the "invidiously discriminatory" category. Oregon v. Mitchell, *supra*.

"To be sure, recent decisions have established that state action regulating suffrage is not immune from the impact of the Equal Protection Clause. But we have been careful in those decisions to note the undoubted power of a State to establish a qualification for voting based on age. See, e. g., Kramer v. Union School District, 395 U.S. 621, 625 [89 S.Ct. 1886, 1888, 23 L. Ed.2d 583]; Lassiter v. Northampton Election Board, 360 U.S., at 51 [79 S. Ct., at 989–990]. Indeed, none of the opinions filed today suggest that the States have anything but a constitutionally unimpeachable interest in establishing some age qualification as such. Yet to test the power to establish an age qualification by the 'compelling interest' standard is really to deny a State any choice at all, because no State could demonstrate a 'compelling interest' in drawing the line with respect to age at one point rather than another. Obviously, the power to establish an age qualification must carry with it the power to choose 21 as a reasonable voting age, as the vast majority of the States have done.[14]

---

14. If the Government is correct in its submission that a particular age requirement must meet the 'compelling interest' standard, then, of course, a substantial question would exist whether a 21-year-old voter qualification is constitutional even in the absence of congressional action, as my Brothers point out. *Ante*, at 323–326. Yet it is inconceivable to me that this Court would ever hold that the denial of the vote to those between the ages of 18 and 21 constitutes such an invidious discrimination as to be a denial of the equal protection of the laws. The establishment of an age qualification is not state action aimed at any discrete and insular minority. Cf.

**6**

United States v. Carolene Products Co., 304 U.S. 144, 152 n. 4 [58 S.Ct. 778, 782, 82 L.Ed. 1234]. Moreover, so long as a State does not set the voting age higher than 21, the reasonableness of its choice is confirmed by the very Fourteenth Amendment upon which the Government relies. Section 2 of the Amendment provides for sanctions when the right to vote 'is denied to any of the male inhabitants of such State, *being twenty-one years of age,* and citizens of the United States. . . .' (Emphasis added.)"
Oregon v. Mitchell, *supra,* 400 U.S. at pp. 294–295, 91 S.Ct. at p. 349. (Opinion of Stewart, J.)

We hold that the principles applicable to state election voting qualifications apply with equal force to cases involving qualifications for state offices. As it is our opinion that the states have [had] [5] the power, at least under the Equal Protection Clause, to establish the age of twenty-one as a reasonable voting age minimum, they have a similar power with respect to setting reasonable age minimums for state and local offices. We do not find the twenty-one year old age minimum for school board membership to be unreasonable or irrational in terms of the purpose it is designed to serve.

The Illinois Constitution of 1970, Art. 10 § 1, states that educational development is a "fundamental goal" of the people of the state. It provides that "The State shall provide for an efficient system of high quality" public education. The responsibility of the legislature to set qualifications for school board members so as to enhance the probability that competent, mature and experienced individuals will fill those positions is undisputed. Local school boards are entrusted with the expenditure of a large proportion of tax monies, and the quality of education depends on the wise use of these funds. We find it patently reasonable for the state legislature, in fulfilling its responsibility, to insist that a person at least reach the age of twenty-one before assuming the important and heavy responsibility of school board membership.

In Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), the Supreme Court considered the application of the "compelling interest" standard to a restriction on candidacy. The case illustrates two principles germane to this case. First, the Court states that the right to be a *candidate,* like the right to vote, is *not per se* a "fundamental right" for purposes of the Equal Protection Clause. Second, only a restriction on candidacy which has a substantial and invidiously discriminatory effect on the *voters* will be "strictly scrutinized" by the courts.

The distinction between the statutory qualification involved in Bullock v. Carter and the statutory qualification challenged here best exemplifies why the strict equal protection analysis is inappropriate in this case. The statute under review in *Bullock* required candidates for local offices to pay substantial filing fees in order to be placed on primary election ballots. In striking down the statutory requirement, the Court stated that:

"The initial and direct impact of filing fees is felt by aspirants for office, rather than voters, and *the Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review.* However, the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters. *Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review.* McDonald v. Board of Election, 394 U.S. 802 [89 S.Ct. 1404, 22 L.Ed.2d 739] (1969). Texas does not place a condition on the exercise of the right to vote, nor does it quantitatively dilute votes that have been cast. Rather,

---

5. The states, of course, no longer have this power because the Twenty-Sixth Amendment made eighteen years the uniform voting age minimum.

the Texas system creates barriers to candidate access to the primary ballot, thereby tending to limit the field of candidates from which voters might choose. *The existence of such barriers does not of itself compel close scrutiny.* Compare Jenness v. Fortson, 403 U.S. 431 [91 S.Ct. 1970, 29 L.Ed.2d 554] (1971), with Williams v. Rhodes, 393 U.S. 23 [89 S.Ct. 5, 21 L. Ed.2d 24] (1968). In approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters.

"Unlike a filing-fee requirement that most candidates could be expected to fulfill from their own resources or at least through modest contributions, the very size of the fees imposed under the Texas system gives it a patently exclusionary character. Many potential office seekers lacking both personal wealth and affluent backers are in every practical sense precluded from seeking the nomination of their chosen party, no matter how qualified they might be and no matter how broad or enthusiastic their popular support. *The effect of this exclusionary mechanism on voters is neither incidental or remote. Not only are voters substantially limited in their choice of candidates, but also there is the obvious likelihood that this limitation (would fall) more heavily on the less affluent segment of the community, whose favorites may be unable to pay the large costs required by the Texas system.*

.   .   .   .   .   .

"Because the Texas filing fee scheme has a real and appreciable impact on the exercise of the franchise, and because this impact is related to the resources of the voters supporting a particular candidate, we conclude, as in *Harper,* [Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169] that the laws must be 'closely scrutinized' and found reasonably necessary to the accomplishment of legitimate state objectives in order to pass constitutional muster." 405 U.S. at 142–144, 92 S. Ct. at 855, 856 (Footnotes omitted; emphasis added.)

The distinction between that case and the case before this court should be clear. First of all, the age qualification falls with equal weight on *all* voters. The challenged classification does not burden more heavily any traditionally recognized "suspect class". Furthermore, the effect on *voters* is insubstantial. The age minimum does not permanently exclude any candidate, nor more importantly, has it been shown to preclude or substantially narrow the field of candidates who espouse any given political, ideological, and/or socio-economic views. We are simply not prepared to accept the idea that by striking down the age minimum in this case we will be removing a discriminatory barrier to the exercise of plaintiffs' rights to vote and to participate on an equal basis in the political process.

We assume that plaintiffs' allegation that the age minimum abridges the right of free association is founded on the proposition that voters have the right to "associate" politically with candidates within the age group eighteen to twenty-one. Yet under that interpretation of the First Amendment, *any* qualification on eligibility to hold office would be an abridgment of the freedom to associate. That is not what the framers could have intended, see Art. 1 § 2, cl. 2, United States Const., nor does it conform to the universal interpretation the courts have given to the words "or [abridge] the right of the people peaceably to assemble, and to petition the government for a redress of grievances". Amendment I, U. S. Constitution.

"The right of 'association,' like the right of belief (Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628), is more than the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means. Association in that

context is a form of expression of opinion; and while it is not expressly included in the First Amendment its existence is necessary in making the express guarantees fully meaningful." Griswold v. Connecticut, 381 U.S. 479, 483, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965).

There is absolutely no suggestion here that the statute in question impedes plaintiffs' right "to engage in association for the advancement of beliefs and ideas". N. A. A. C. P. v. Alabama, 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L. Ed.2d 1488 (1958). Cf. Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L. Ed.2d 24 (1968). See also, N. A. A. C. P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Pontikes v. Kusper, 345 F.Supp. 1104 (N.D.Ill.1972).

Finally, were we to strike down the age minimum requirement here, we would be accomplishing nothing more than substituting our judgment for that of the Illinois legislature. This we decline to do. Although there might be, as plaintiffs suggest, reasons why the present age minimum is undesirable and good reasons why someone old enough to vote should be old enough to serve on a local school board, those reasons should be presented to the legislature, not to a court. Plaintiffs' apparent suggestion that, at least in this instance, there must be equality between the voting age and the age qualification for candidacy is simply unsupportable under any constitutional doctrine known to this court. In fact, the Constitution itself belies such an assertion. Cf. Art. 1 § 2 cl. 2; Art. 1 § 3 cl. 3; Art. 2 § 1 cl. 4 with Amendment XIV § 2; Amendment XXVI.

Hence, we hold that Ill.Rev.Stat. ch. 122, § 10-10 is the result of a valid exercise of legislative power by the State of Illinois as preserved for it by the Tenth Amendment.

*"In its internal administration the State (so far as concerns the Federal Government) has entire freedom of choice as to the creation of an office* *for purely state purposes, and of the terms upon which it shall be held by the person filling the office. . . ."* (Emphasis added.) Wilson v. North Carolina, 169 U.S. 586, 594, 18 S.Ct. 435, 438, 42 L.Ed. 865 (1898).

Accordingly, defendant's motion to dismiss is hereby granted.

SWYGERT, Chief Circuit Judge (concurring).

Although I agree substantially with what Judge Decker has succinctly written and concur in the result, I would like to emphasize my view that the right to candidacy is subject to the same constitutional protections as is the right to vote. As Chief Judge Coffin has recently explained in Mancuso v. Taft, 476 F. 2d 187 (1st Cir., 1973), whenever a state regulates the right of a person to become a candidate for public office, it also regulates the citizen's right to vote. Consequently, any state action that substantially restricts the right to candidacy must be given strict scrutiny and meet the test that the restriction is justified by a compelling state interest.

The difficulty with the present case is that until the adoption of the Twenty-sixth Amendment the right to be a candidate for school board membership coincided with the age qualification to vote, namely, twenty-one years. Because of the adoption of the Amendment the question arises: Does the Constitution require that the statutory qualification for school board candidacy coincide with the voting age qualification incorporated in the Amendment? I do not think that it does.

It is quite conceivable that the Illinois legislature, in enacting Ill.Rev.Stat., ch. 122, § 10-10, expressed a desire that qualifications for school board members should be open to all voters since at the time of the enactment all those aged twenty-one and over were qualified voters. It does not follow, however, that the Illinois legislature through nonaction has not, since the enactment of the Twenty-sixth Amendment, determined,

at least inferentially, that the twenty-one year old requirement for school board candidacy should stand. Accordingly, we must defer to this inference, and, as Judge Decker states, not substitute our judgment for the legislative body. My only stricture with his opinion is his observation that the "twenty-one year old age minimum . . . [is not] unreasonable or irrational in terms of the purpose it [the statute] is designed to serve" and that it is "patently reasonable for the state legislature, in fulfilling its responsibility, to insist that a person at least reach the age of twenty-one before assuming the important and heavy responsibility of school board membership." These observations, in my mind, supply a needless imprimatur for the Illinois legislature to continue a passive nonreappraisal of the statute in the light of the Twenty-sixth Amendment.