Ian BERG, Plaintiff,

v.

Thomas C. EGAN, III, et al., Defendants.

No. CIV. A. 94–7805.

United States District Court,
E.D. Pennsylvania.

Sept. 25, 1997.

Philip J. Berg, Law Offices of Philip J. Berg, Lafayette Hill, PA, for Plaintiff.

Arthur R. Shuman, Wyndmoor, PA, for Defendant Thomas C. Egan, III.

Robert H. Nemeroff, Jaffe, Friedman, Schuman, et al., Elkins Park, PA, for Defendants Mario Mele, Joseph M. Hoeffel, III, Montgomery County Bd. of Commr's, Jon D. Fox.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff alleges that the defendants violated his constitutional rights of due process, equal protection and freedom of association when he was precluded for 49 days from being a candidate for the position of District Justice in Montgomery County, Pennsylvania. At the time of the claimed violation, the plaintiff was sixteen years old and a full-time high school student. Before the court are the defendants' motions for summary judgment. For the reasons that follow, the defendants' motions will be granted.

## I. BACKGROUND

On March 9, 1993, plaintiff Ian Berg filed nomination petitions with the Montgomery County Board of Elections to enter the Democratic and Republican primaries for the office of District Justice[1] in Montgomery County. On March 16, 1993, defendant Thomas Egan[2] filed a petition with the prothonotary of the Court of Common Pleas of Montgomery County[3] to strike the plaintiff's nomination petitions.

On March 18, 1993, the Honorable Bernard A. Moore, Judge of the Court of Common Pleas of Montgomery County, held a hearing on Mr. Egan's petition.[4] At the hearing, Mr.

---

[1]. A district justice is a justice of the peace who presides over summary offenses, certain civil claims involving less than $8,000, and arraignments. Duties of the position also include the fixing and accepting of bail, the issuance of warrants and other duties of a similar nature. 42 Pa.C.S.A. § 1515 (West Supp.1981). An individual does not have to be an attorney to hold this position. 42 Pa.C.S.A. § 3101.

[2]. It is undisputed that Thomas Egan was an Assistant District Attorney for Montgomery County and that he worked with and filed his petition at the behest of the Honorable Deborah Lukens, who at the time was also an Assistant District Attorney for Montgomery County and was a candidate for the same District Justice position that the plaintiff was seeking. Judge Lukens went on to win election as District Justice in Montgomery County and currently holds that position.

[3]. "Prothonotary" is the title given to the officer who officiates as principal clerk of a particular court. Black's Law Dictionary 1224 (6th ed.1990). In each county of Pennsylvania, there is one prothonotary for the court of common pleas who is known as the prothonotary of that county. 42 Pa. Cons.Stat. Ann. §§ 102, 2731 (West 1981).

[4]. At the beginning of the proceedings, the Montgomery County Board of Elections informed the court that the Board of Elections had reached a decision, on the day of the hearing, to reject Mr. Berg's nomination petitions. Transcript of *Egan v. Mele*, Civ. A. No. 93–05298, at 4.

Egan contended that Mr. Berg's petition should be stricken because the affidavit submitted in support of the petition, swearing that Mr. Berg was eligible to hold the office of District Justice, was falsely sworn. Mr. Egan argued that because Mr. Berg was a minor, he was not in fact eligible to hold the office of District Justice.

Mr. Egan acknowledged that Pennsylvania law did not set a minimum age requirement to run for District Justice. However, Mr. Egan claimed that because the Pennsylvania child labor laws prohibited minors from working more than six days a week, and prohibited minors who are enrolled in regular day school from working more than twenty-eight hours per week and from working past midnight on weekdays and 1:00 a.m. on weekends, Mr. Berg would be unable to discharge the duties of the office.[5]

On March 19, 1993, the day after the hearing, Judge Moore entered an order striking Mr. Berg's petitions. Mr. Berg then filed simultaneous appeals to the Commonwealth Court and the Supreme Court of Pennsylvania. On April 2, 1993, the Commonwealth Court affirmed Judge Moore's order striking Mr. Berg's petition. On May 7, 1993, the Supreme Court held that the eligibility of the candidate to run was the sole criteria under which to evaluate the candidate's nomination petition, and that it was impermissible to look beyond the Election Code to unrelated statutes and rules to speculate as to the eligibility of a candidate to serve. *Egan v. Mele*, 535 Pa. 201, 634 A.2d 1074, 1077 (1993).[6] The Supreme Court vacated the Commonwealth Court's order[7], directed the Montgomery County Board of Elections to place Mr. Berg's name on the ballot for the primary election and ordered that new absentee ballots be issued with Mr. Berg's name on them. *Id.* 634 A.2d at 1078.

Pursuant to the mandate of the Pennsylvania Supreme Court, Mr. Berg's name appeared along with that of the other candidates on the May 18, 1993 primary ballot. Mr. Berg, however, failed to get elected to represent either the Democratic or Republican Party in the election for District Justice.

Mr. Berg now contends that he was unable to properly campaign, raise funds and communicate with party officials during the 49 days of the pendency of his appeals (i.e. March 19, 1993 to May 7, 1993). He has brought this federal civil rights action, pursuant to sections 1983 and 1985 of title 42 of the United States Code, alleging the defendants violated his Fourteenth Amendment rights of due process and equal protection and his First Amendment right of free association. He claims that the violations arose from the individual actions or, conspiracy between or concerted actions of Thomas Egan, the Montgomery County Board of Commissioners, the Montgomery County Board of Elections, Michael H. McAdoo as Chief Clerk of the Montgomery County Board of Elections, and Mario Mele, Joseph M. Hoeffel, III, and Jon D. Fox individually and in their official capacities as Montgomery County Commissioners and as members of the Montgomery County Board of Elections. The allegedly violative act by defendant Egan was his filing of a petition to strike the plaintiff's nomination petitions. The allegedly violative acts or omissions of all other defendants were their rejection of the plaintiff's nomination petitions and their failure to object to several alleged procedural defects in defendant Egan's petition to strike.[8] The

---

**5.** At the hearing, Mr. Berg moved for leave to intervene. The court granted Mr. Berg's motion and Mr. Berg then participated fully in the proceeding.

**6.** The Supreme Court did "not address [Mr. Berg's] arguments regarding procedural defects in the challenges to his nomination petitions." *Id.* 634 A.2d at 1076 n. 4.

**7.** The Supreme Court held it had exclusive jurisdiction of appeals from final orders of the courts of common pleas involving the right to public office and, therefore, vacated the Commonwealth

Court's order. *Egan v. Mele*, 535 Pa. 201, 634 A.2d 1074, 1075 n. 2 (1993).

**8.** The plaintiff alleges that all defendants, except defendant Egan, failed to enforce or observe several Pennsylvania statutes regulating elections. The alleged procedural defects include: (1) the failure to require defendant Egan's petition to strike to name the plaintiff as a party; (2) the failure to require defendant Egan to name the Montgomery County Board of Elections as a party (it instead named the Montgomery County Board of Commissioners who are made up of the same members as the Montgomery County Board

plaintiff alleges that these acts or omissions, together, wrongfully interfered with plaintiff's candidacy for District Justice.

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp., v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. *42 U.S.C. § 1983*

The plaintiff argues that his constitutional rights to due process, equal protection and free association were violated by the defendants' individual and concerted actions, in violation of section 1983.[9]

#### 1. *Plaintiff's Due Process Claim*

To establish a claim under section 1983 for a violation of the rights protected by the due process clause of the Fourteenth Amendment,[10] plaintiff must demonstrate that the defendants are state actors[11] and

---

of Elections Commissioners); (3) the failure to require defendant Egan to serve the petition to strike on the proper party, as it was served on the Montgomery County Board of Commissioners but. should have been served on the Montgomery County Board of Elections; (4) the failure to reject the plaintiff's nomination petition within seven days of its filing; (5) the failure to argue that defendant Egan had standing to petition to strike only Republican candidates, as he was a Republican he allegedly did not have standing to challenge the plaintiff's Democratic nomination petition; (6) the failure to argue that the petition to strike improperly asserted there was an age requirement to run for District Justice; and (7) the failure to object to defendant Egan's oral request to amend his petition by naming the Montgomery County Board of Elections as the defendant.

The Court of Common Pleas addressed these alleged procedural defects and, nevertheless, ordered that the plaintiff's nomination petition be stricken. The defendant argues that these omissions by all defendants except defendant Egan are evidence of the conspiracy between the defendants which precipitated the violation of the plaintiff's constitutional rights. Because the Court bases its granting of the defendants' motions for summary judgment on the plaintiff's underlying substantive constitutional claims, the Court does not reach the merits of the plaintiff's statutory claims based on these procedural issues.

9. 42 U.S.C. § 1983 provides:

> Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

10. The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law.... " U.S. Const. amend. XIV, § 1.

11. It is uncontested that the members of the Montgomery County Board of Elections are state actors. With respect to Mr. Egan, although he is employed as an assistant district attorney, it is undisputed that in this case he was acting as a private citizen. Whether Mr. Egan in his capacity as a private citizen would be liable as, a state actor under the *public function test*, the *joint action/conspiracy test*, the *symbolic relationship*

that they deprived him of a constitutionally protected liberty or property interest without due process. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The plaintiff makes two claims regarding the violation of his due process rights. Mr. Berg first alleges that the defendants' "actions were not related to a legitimate interest...." (Complaint at ¶ 44). This assertion sounds in substantive due process. His second contention is that he was deprived of a "property interest in being a candidate for District Justice pursuant to rights created under state law." This contention sounds in procedural due process. (Plaintiff's Memorandum in Opposition to Defendant Egan's Motion for Summary Judgment at 9.) The court will initially address Mr. Berg's procedural due process claim.

■ First, the court notes that no deprivation occurred here. The plaintiff was not prevented from being a candidate for District Justice. To the contrary, Mr. Berg's name appeared on the ballot as a candidate for the Democratic and Republican primaries and new absentee ballots were issued with his name on them. He ran and was defeated. Plaintiff claims that, although his name appeared on the ballot, he "was deprived the opportunity to campaign for practically all of the primary election." [12] (Second Amended Complaint at ¶ 35.) This contention is akin to a claim that interference with a candidate's ability run an effective campaign is the functional equivalent of removing an individual's name from the ballot. The validity of this proposition is doubtful. See *Johnson v. F.C.C.,* 829 F.2d 157 (D.C.Cir.1987) (exclu-

sion from televised debate does not deprive candidate of ability to run for office); *Lahaza v. Azeff,* 790 F.Supp. 88 (E.D.Pa.1992) (interfering with candidate's campaign by initiating reputation damaging investigation is not equivalent to preventing candidate from running for office). However, in the present procedural posture, the Court will construe the claim in the light most favorable to the plaintiff, and will analyze it as though Mr. Berg had been removed from the ballot.

■ "[U]nlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause." *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944) (quoting *Taylor v. Beckham,* 178 U.S. 548, 20 S.Ct. 890, 44 L.Ed. 1187 (1900)). However, even if such a property right was legally recognized, procedural due process requirements were met. Due process requires that when a state seeks to terminate a protected interest, it must afford notice and opportunity for a hearing before the termination becomes effective. *Roth,* 408 U.S. at 569, n. 7, 92 S.Ct. at 2705, n. 7, 33 L.Ed.2d 548 (1972). In this case, plaintiff received notice of defendant Egan's specific reasons for wanting to strike the plaintiff's nomination petition, was afforded a hearing, at which plaintiff was represented by counsel and where he was afforded an opportunity to raise objections and present evidence, before a judicial officer prior to the time that the alleged deprivation occurred. [13] The uncontroverted facts of this case indicate that the plaintiff's procedural due process rights were not violated. *See Cornett v. Sheldon,* 894 F.Supp. 715 (S.D.N.Y.1995).[14]

---

test or a combination of tests is an issue which is not reached by this Court.

**12.** The defendants point out that the plaintiff was not legally prevented from campaigning for the primary elections due to the challenge to his nomination petitions, only that he claims he was unable to campaign due to the time constraints resulting from the litigation.

**13.** While the Montgomery County Board of Elections had decided to reject Mr. Berg's nomination petitions on the day of the hearing, the hearing still preceded the alleged deprivation because Mr. Berg's name was not removed from the ballot until Judge Moore of the Court of

Common Pleas of Montgomery County ordered that Mr. Berg's petition be stricken.

**14.** In *Cornett,* the Southern District of New York found that a candidate had received due process under a similar set of facts. The plaintiff, Delco L. Cornett, submitted a petition to the New York City Board of Elections in an effort to be placed on the ballot as a candidate for United States Representative. An individual objected to Mr. Cornett's petition and sent specifications of the objections to Mr. Cornett at the incorrect address. Nevertheless, Mr. Cornett received a notice from the Board informing him of a general objection to his nomination petition and the time, date and location of the hearing on the

Therefore, summary judgment against the plaintiff on his procedural due process claims is appropriate.

■ Mr. Berg's substantive due process claim is more appropriately treated as an equal protection claim. Substantive due process analysis is appropriate when state action burdens all persons equally when they exercise a specific right. John E. Nowak et al., *Constitutional Law* § 10.7, at 349 (4th ed.1991). Here, the plaintiff is not claiming that the defendants burdened all persons equally. Instead, he claims he was deprived of his right to be a candidate because of his age. When state action distinguishes between similarly situated persons to determine who may and may not exercise a right, the court's inquiry is guided by the principles applicable to equal protection analysis. *Id.*

### 2. *Plaintiff's Equal Protection Claim*

■ Plaintiff claims that the equal protection clause of the Fourteenth Amendment [15] was violated when he was deprived of his right to run for office because of his status as a minor. This equal protection claims, therefore does not arise from an allegedly discriminatory statute, but rather from an alleged unequal administration of a facially neutral statute. *See E & T Realty v. Strickland,* 830 F.2d 1107, 1112 n. 5 (11th Cir.1987) (discussing the distinction). Discriminatory application of a facially neutral law can violate the equal protection clause when state officials apply the law based on a suspect classification or when they apply the law to prevent the exercise of a fundamental right.[16] *Yick Wo v. Hopkins,* 118 U.S. 356, 6

S.Ct. 1064, 30 L.Ed. 220 (1886); *United States v. Schoolcraft,* 879 F.2d 64, 68 (3d Cir.) *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989).

■ It is well settled that age classifications are not suspect and therefore do not trigger strict scrutiny. *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–13, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976). Additionally, the ability to become a candidate for a state office is not a fundamental right. *See Bullock v. Carter,* 405 U.S. 134, 142–43, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972); *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Nevertheless, the Supreme Court has counseled that the rights of prospective candidates to appear on the ballot deserve special attention because they are inextricably intertwined with voter rights protected by the First and Fourteenth Amendments; more specifically, the right to vote and freedom of association. *Anderson v. Celebrezze,* 460 U.S. 780, 786, 103 S.Ct. 1564, 1568–69, 75 L.Ed.2d 547 (1983). The Supreme Court's main concern is the tendency of ballot access restrictions to limit the field of candidates from which voters might choose. *Id.* To guard against this danger, the Supreme Court has directed that ballot access restrictions must pass muster under a balancing test. "[A court] must first consider the character and magnitude of the asserted injury to the rights protected by the [voters'] First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the

validity of his petition. Mr. Cornett appeared at the hearing and contested the objections. After the hearing, Mr. Cornett's petition was found to be invalid. He thereafter filed a section 1983 action against the New York City Board of Elections alleging that he was denied due process and equal protection because the Board failed to follow its rules requiring that the challenged petitioner be properly served with the specific objections to the candidate's nomination petition. The court, however, found that Mr. Cornett's due process rights were not violated as he received both notice and a hearing. *Cornett,* 894 F.Supp. 715 (S.D.N.Y.1995).

15. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State

shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

16. Ordinarily, when such a claim is made, plaintiff must prove that the intent, purpose or affect of the government action was to discriminate. Here, the defendants readily admit that they sought to exclude minors from running for office because child labor laws would prevent minor from fulfilling the duties of a District Justice. Therefore, the court need not address whether the plaintiff has proved that the defendants' interpretation of the applicable laws had a discriminatory intent, purpose or effect.

burden imposed by its rule." *Id.* at 789, 103 S.Ct. at 1570.

██ Here, the injury to voter rights was relatively small. Mr. Berg appeared on the ballot on election day and voters were free to vote for or associate with Mr. Berg if they pleased. The crux of Mr. Berg's argument is that because of the uncertainty of whether his name would appear on the ballot, pending the decision of the Pennsylvania Supreme Court he was prevented from campaigning for office for a period of 49 days. The only conceivable injury to voters was their inability to receive information about Mr. Berg for 49 days. On the other hand, the state has an interest in excluding from the ballot minors who would be prevented by child labor laws from fulfilling the duties of the position of District Justice. The basis for the exclusion is to avoid frivolous candidates and thus preserve the integrity of the electoral process. This state interest is a recognized and legitimate one.[17] *See American Party of Texas v. White,* 415 U.S. 767, 783, n. 14, 94 S.Ct. 1296, 1307, n. 14, 39 L.Ed.2d 744 (1974) (categorizing state's interest in avoiding frivolous candidates and protecting integrity of electoral process as compelling).

Balancing the rights of the voters against that of the state, the court finds that the state's interest in preserving the integrity of the ballot outweighs the impact on the voters' rights caused by their failure to receive information about Mr. Berg for 49 days. Therefore, defendants' actions did not violate the equal. protection clause of the United States Constitution and summary judgement against the plaintiff is appropriate.

### 3. *Plaintiff's Freedom of Association Claim*

██ Mr. Berg claims that the removal of his name from the ballot for a period of 49 days violated his Fourteenth Amendment right to freedom of association. Such a claim misconstrues the relationship between candidacy for elective office and the right to freedom of association. The First Amendment has long been interpreted as prohibiting the federal government from infringing upon an individual's right to free association. *Williams v. Rhodes,* 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968). The Fourteenth Amendment makes those prohibitions applicable to the states. *Id.* While the right to free association includes association for the advancement of political beliefs, the free association right implicated when a candidate's name is removed from the ballot is the free association right of the voter who wishes to associate with the candidate by casting his or her vote in the candidate's favor. *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).[18] Given that removal of the candidate's name from a ballot does not implicate the candidate's freedom of association, summary judgment against the plaintiff is appropriate on his claim of violation of his right of free association.

### B. *42 U.S.C. § 1985(3)*

██ The plaintiff argues that the defendants violated section 1985(3) of title 42 of the United States Code when they conspired to interfere with his rights to due process, equal protection and free association.[19] "The Supreme Court has held that § 1985(3) protects persons only from those conspiracies

---

**17.** The fact that the Election Commission's decision was later found by the court to be an erroneous application of state law is irrelevant. *Flemming v. Adams,* 377 F.2d 975, 978 (10th Cir.) *cert. denied,* 389 U.S. 898, 88 S.Ct. 219, 19 L.Ed.2d 216 (1967). Violation of state law is not a violation of the Constitution. *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944).

**18.** While a candidate has standing to raise the constitutional rights of voters when challenging candidacy restrictions, Mr. Berg appears to be asserting an infringement of his own freedom of association rights rather than in infringement of voters' right of association. *Mancuso v. Taft,* 476 F.2d 187, 190 (1st Cir.1973) (citing *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92

(1972)). However, if Mr. Berg is asserting infringement of voters' right of free association, those rights were found not to have been unconstitutionally burdened by the defendants' actions when this Court discussed Mr. Berg's equal protection claim.

**19.** That sections provides:
If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in

motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *W.B. v. Matula,* 67 F.3d 484, 501 (3d Cir.1995) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). Plaintiff's claim must fail at the outset because the conspiracy alleged by the plaintiff is not motivated by class-based, invidiously discriminatory animus.

Here, age is the only potential class that the plaintiff has cited as a reason for the defendant's alleged deprivation. However, distinctions based on a person's status as a minor are not invidious. *Blassman v. Markworth,* 359 F.Supp. 1 (N.D.Ill.1973) (citing *Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970)).[20] This is so for at least for two reasons. First, distinctions between minors and adults are less likely than other distinctions to be irrational or arbitrary because they distinguish between groups of people with different legal rights and responsibilities. Second, unlike the case with race or sex, minority is, of course, cured by the passage of time. Those discriminated against on the basis of youth therefore suffer only a temporary disability. *See Felix v. Milliken,* 463 F.Supp. 1360, 1373 (E.D.Mich. 1978) (21–year–old drinking age not a violation of equal protection).

In conclusion, because plaintiff has not pointed to facts which support every element of his claim of class-based invidious discrimination, summary judgment against the plaintiff is appropriate on his claims arising under section 1985. *Accord Smith v. Walsh,* 519 F.Supp. 853, 858 (D.Conn.1981) ("[A]lleged

conspiracies based on a person's status as a minor do not state a cause of action under section 1985.").

## IV. CONCLUSION

The defendants have demonstrated that there are no genuine issues of material fact in dispute on plaintiff's claims of violations of his due process rights, equal protection of the laws and freedom of association.[21] The defendants have also demonstrated that they are entitled to judgment as a matter of law on these claims. Therefore, judgment is entered in favor of the defendants and against the plaintiff.

---

any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

**20.** The court in *Blassman* invoked the reasoning of Justice Stewart: "[I]t is inconceivable to me that this Court would ever hold that the denial of the vote to those between the ages of 18 and 21 constitutes such an invidious discrimination as to be a denial of equal protection of the laws. The

establishment of an age qualification is not state action aimed at any discrete and insular minority." *Blassman,* 359 F.Supp. at 5 (quoting *Mitchell,* 400 U.S. at 295 n. 14, 91 S.Ct. at 349 n. 14 (Stewart, J. concurring in part and dissenting in part)).

**21.** The Court notes the defendants also moved for summary judgment on: (1) the ground that the plaintiff failed to produce evidence of any conspiracy or concerted action with a state actor; and (2) the ground that the actions which allegedly infringed the plaintiff's constitutional rights was not fairly attributable to the state because it was the Court of Common Pleas who ordered his nomination petition stricken and, once it was reinstated, it was the people of Montgomery County who failed to elect the plaintiff in either the Democratic or Republican primary.